# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| VERONICA RAYNOR, *Individually and as the Personal Representative of the Estate of Reuel Griffin*, | : : : : | | |
| Plaintiff, | : : | Civil Action No.: | 14-0750 (RC) |
| v. | : : : | Re Document No.: | 127 |
| DISTRICT OF COLUMBIA, *et al.*, | : : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION AND ORDER

### GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR *IN CAMERA* REVIEW OF CERTAIN DOCUMENTS UNDER SEAL AND FOR AN ORDER THAT THE DOCUMENTS ARE NOT PRIVILEGED [127]

On April 29, 2014, Plaintiff Veronica Raynor filed this action against the District of Columbia and several other defendants based on the death of Reuel Griffin at Saint Elizabeths Hospital in 2012. *See generally* Compl., ECF No. 1. As part of the discovery in this case, Plaintiff has sought communications of various officials at that hospital, the Department of Mental Health, and the Department of Healthcare Finance. To date, the District has apparently produced more than 250,000 pages of documents. Throughout this process, however, the District has made extensive redactions to documents on the grounds that such information was subject to attorney-client privilege, deliberative process privilege, or contained personally identifiable information of patients.

On July 24, 2017, the District sent Plaintiff a claw-back letter, claiming that it had inadvertently produced privileged information and demanded that Plaintiff return certain documents. In total, the District is seeking to claw back approximately 200 documents.

Plaintiffs, however, disputed the District's right to claw those documents back. The parties brought this issue to the Court's attention and the Court directed the parties to meet, confer, and attempt to resolve this matter on their own. Regrettably, the parties have been unable to resolve the matter without judicial intervention and therefore they now request the Court to review the documents and make a ruling. For the reasons stated below, the Court finds that the District has conceded any argument on claims of deliberative process privilege and likely waived any assertion of attorney-client privilege for the documents at issue for failing to act promptly.

### A. Deliberative Process Privilege

One of the grounds that the District has claimed for withholding documents is the deliberative process privilege. That privilege "protects communications that are part of the decision-making process of a governmental agency." *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993) (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150–52 (1975)). Plaintiff argues, however, that the District cannot assert the deliberative process privilege in this case because that process is at issue in this very litigation. *See* Pl.'s Mot. at 3 (citing *In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 145 F.3d 1422, 1424 (D.C. Cir. 1998) and *Convertino v. U.S. Dep't of Justice*, 674 F. Supp. 2d 97, 102 (D.D.C. 2009)). While this position certainly seems consistent with the law in this Circuit and is most likely correct, the Court need not decide this issue because the District has failed to respond to the argument in its opposition. It has therefore conceded the point. *See Texas v. United States*, 798 F.3d 1108, 1110 (D.C. Cir. 2015) (Local Rule 7(b) "is understood to mean that if a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded." (internal citations and quotation marks

2

omitted)).  Accordingly, Plaintiff need not return any information based on the assertion of the deliberative process privilege.

### B.  Attorney-Client Privilege

The District also claims that it is entitled to the return of information based on an assertion of the attorney-client privilege.  The attorney-client privilege "shelters confidential communications between an attorney and client, including their agents, made with a primary purpose of seeking or providing legal advice."  *United States ex rel. Barko v. Halliburton Co.*, 74 F. Supp. 3d 183, 187 (D.D.C. 2014).  "Traditionally, the courts have concluded that the burden falls to the claimant of the privilege . . . to present sufficient facts to establish the privilege." *Amobi v. D.C. Dep't of Corr.*, 262 F.R.D. 45, 51 (D.D.C. 2009).  Likewise, "[t]he D.C. Circuit's strict definition of privilege carries over to the waiver of privilege, placing the burden of protecting privileged communications squarely on the proponent of the privilege."  *Banneker Ventures, LLC v. Graham*, 253 F. Supp. 3d 64, 71 (D.D.C. 2017); *see also Amobi*, 262 F.R.D. at 53 ("In this district, prior to the enactment of [Rule 502], 'the proponent of the privilege . . . [had] the burden of showing that it [had] not waived attorney-client privilege'" and "I see no reason why Rule 502 can be interpreted to modify that rule and I will apply it."); *Educ. Assistance Found. for the Descendants of Hungarian Immigrants in the Performing Arts, Inc. v. United States*, 32 F. Supp. 3d 35, 44 (D.D.C. 2014) ("The party asserting the privilege, even if disclosure of the communication was inadvertent, bears the burden of establishing each of these three elements." (citing *Williams v. District of Columbia*, 806 F. Supp. 2d 44, 48 (D.D.C. 2011))).  Accordingly, it is the District's burden to show *both* that the information that it is seeking returned is protected by the privilege *and* that it has not waived the privilege by disclosing those documents to Plaintiff.

Although the Court is highly skeptical of the vast majority of the District's privilege claims, the Court need not address the issue at this juncture because, even assuming that the information is privileged, the Court finds that District has by and large failed to show that the privilege was not waived. First, while the District claims that Plaintiff should not be permitted to argue waiver based on the June 2017 Protective Order, *see* Def.'s Opp'n at 14, ECF No. 14 (citing ECF No. 101), its argument does not carry water. The District points to language in the Protective Order, stating that "[i]f a producing party inadvertently discloses documents or items that are asserted to be privileged or otherwise immune from discover, the producing party shall promptly advise the receiving party in writing and request that the item or information be returned and any copies be destroyed." Protective Order ¶ 3(c), ECF No 101. It states further that "[n]o party to this action shall thereafter assert that such disclosure waived any privilege or immunity." Protective Order ¶ 3(c). The problem here is that the overwhelming majority of the discovery in this matter was produced long *before* June 2017, when the Protective Order was issued. The District does not explain why the provision of the Protective Order should apply to information already produced and the language of the Order itself does not indicate any intent to apply retroactively. Thus, the District has not shown why Plaintiff should be precluded from arguing waiver in this instance. The Court, therefore, turns to that precise issue.

The issue of inadvertent waiver is governed by Rule 502(b) of the Federal Rules of Evidence. That Rule states that "disclosure does not operate as a waiver in a federal or state proceeding if (1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure

26(b)(5)(B).'" Fed. R. Evid. 502(b). The Court is persuaded that the District has failed to satisfy this standard.

Although the District claims that the production of privileged material in this matter was inadvertent, that fact is far from clear. Indeed, it appears more likely that different reviewers redacted multiple versions of the same document in different ways based on their different understanding of the privilege's application—not inadvertence due to matters slipping through the cracks in a large production. Nevertheless, the Court will assume for purposes of this motion that, in fact, the information was produced inadvertently.

Even if the District's production of privileged information was inadvertent, it must still prove that it took reasonable steps to prevent disclosure. *See Williams v. District of Columbia*, 806 F. Supp. 2d 44, 49 (D.D.C. 2011) ("[T]he holder of the privilege bears the burden of establishing that it 'took reasonable steps to prevent disclosure' in the first place." (citing Fed. R. Evid. 502(b)(2))). But the District makes no effort to provide any detail or in any way explain the sorts of procedures or methodologies it followed in reviewing and producing documents. *See id.* at 50 ("The general statement that a privilege review was performed, without any supporting details, is completely uninformative."); *Amobi*, 262 F.R.D. at 54–55 ("[D]efendants do not meet the burden of proving that the privilege was not waived" when "there is no indication of what specific efforts were taken to prevent disclosure, let alone any explanation of why these efforts were, all things considered, reasonable in the context of the demands made upon the defendants" and "the court is left to speculate what precautions were taken by counsel to prevent this disclosure."). Rather, the District argues only summarily, and without record support, that the small fraction of privileged documents inadvertently slipped through its process as part of large productions on tight deadlines. These assertions come only in the form of unsworn statements

5

from counsel, and for whom it is unclear how much personal knowledge counsel may actually have on the issues of discovery here. This is simply not enough. Indeed, other Judges on this Court have admonished the District on exactly this point. *See Williams*, 806 F. Supp. 2d at 49 (holding that the District's exclusive reliance on "the unsworn averments of its counsel, who is almost certain to lack personal knowledge of the circumstances that surrounded the District's review and production" and failure to support arguments with declaration of those involved in discovery was "both inexplicable and unacceptable and constitutes sufficient grounds to deny the District's motion outright").

But more problematic is the District's failure to demonstrate, as it must under Rule 502(b), that it *promptly* took reasonable steps to rectify the errors that it has identified. Although "privilege is not waived by a mere disclosure to another party without an express intent to waive such privilege, the party making the disclosure cannot sit idly and do nothing to prevent inadvertent disclosures, nor can that party fail to take steps to rectify an inadvertent disclosure once one has been discovered." *Absolute Activist Value Master Fund Ltd. v. Devine*, 262 F. Supp. 3d 1312, 1323 (M.D. Fla. 2017). According to Advisory Committee Notes for Rule 502(b), one of the factors courts should consider is the "time taken to rectify the error." Fed. R. Evid. 502 advisory committee's note (2007).

The District contends, again in conclusory fashion, that it acted "promptly" when it "sent Plaintiff a clawback letter to rectify the error." Defs.' Opp'n at 15. This assertion is belied by the facts in this case. Many of the documents at issue were produced back in 2015. There is good reason to believe that the District either knew or should have known about any errors in those documents as the District itself referenced some of these documents in its early discovery responses and Plaintiff later used them in its Motion to Compel. Yet the District remained silent

6

on the issue until July 24, 2017, when it issued its claw back letter. Although the District does not specifically indicate when it learned of the errors in each of the documents, it is at least reasonable under the facts of this case to expect the District to have both learned about the production of privileged material and to have acted on that information within one year of production. That is, the District can only reasonably argue that it has acted promptly in issuing its claw back letter with respect to documents that were produced within one year of the letter. Accordingly, the District has not been prompt with regard to any documents produced before July 24, 2016 and has consequently waived any privilege it might have claimed in those documents. Thus, Plaintiff need not return documents or information that was produced before this date, nor must it return any later-produced copies of the same information. Because there are so many different versions of the same communications spanning various Bates ranges, it is possible that this finding alone may resolve the dispute for all documents at issue.

For the forgoing reasons, Plaintiff's motion is **GRANTED IN PART AND DENIED IN PART**. It is hereby:

**ORDERED** that the parties have thirty days from the date of this Memorandum Opinion and Order to determine whether there remain any documents or information for which the Court must still assess an assertion of attorney-client privilege. If so, the parties are ordered to (1) identify those documents by Bates numbers, (2) provide the Court with privilege log entries associated with those documents, and (3) the District must provide the Court with any unredacted versions of "root" attorney-client communications upon which an assertion of privilege is based.

**SO ORDERED**

Dated: February 12, 2018　　　　　　　　　　　　　　　　　　RUDOLPH CONTRERAS
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge